# Pritchett *v.* Pollock & Co.

*Statutory Trial of Right of Property to Stock of Goods.*

1. *Partnership and individual debts distinguished.*—When one partner borrows money, giving his individual note for it, and afterwards "puts it in the business of the firm," this does not make it a partnership debt, nor render the partnership liable for it; and the same principle applies to money borrowed and used in buying an interest in a partnership, or put in as a contribution to the capital stock by the borrower.

2. *Sale of goods by insolvent debtor to creditor; validity as against other creditors.*—A failing or insolvent debtor may sell his entire stock of goods to an existing creditor, in payment of a *bona fide* debt, provided a reasonable price is paid, and the debtor does not thereby secure or reserve to himself a pecuniary benefit beyond what the law allows; but, when the debtor is a partnership, and part of the recited indebtedness consists of the individual debts of the partners to the purchasing creditor, for which the partnership is not liable, this is a fraud on the other partnership creditors, for which they may avoid the entire sale.

3. *Error without injury in charges given or refused.*—When the court might, on the uncontroverted evidence, have given a general charge without hypothesis in favor of the plaintiff, other charges, given or refused, could not have injured the defendant, and are not ground of reversal in his favor.

APPEAL from the Circuit Court of Wilcox.

Tried before the Hon. JOHN MOORE.

This was a statutory trial of the right of property in and to a stock of goods, between J. Pollock & Co., plaintiffs in attachment against McCaskey & Ratcliff, and D. S. Pritchett as claimant. The stock of goods had belonged to said Mc-

Caskey & Ratcliff, and the plaintiffs' attachment was levied on them on the 9th January, 1886. The claimant derived title under a purchase by him from said McCaskey & Ratcliff, as evidenced by a bill of sale dated January 7th, 1886, which recited as its consideration the payment of $10,225.36 ; that is, "$6,625.56, indebtedness of the firm of McCaskey & Ratcliff to said D. S. Pritchett, and $3,600 in cash paid." The court charged the jury, at the instance of the plaintiffs, as follows : "(1.) If the jury believe, from the evidence, that the sale by McCaskey & Ratcliff to Pritchett was made by them for the purpose of paying preferred creditors, and that they applied the proceeds of such sale, or a portion thereof, to the payment of such preferred creditors ; and if they further find that said McCaskey & Ratcliff were at the time insolvent, and that Pritchett had knowledge of such insolvency and purpose, or had such information as to put him on inquiry, which, if followed up, would have led to the discovery of such intention ; then the sale to Pritchett was void, and the jury must find for the plaintiffs." The claimant excepted to this charge, and he now assigns it as error, with other charges which require no special notice.

WATTS & SON, and J. N. MILLER, for appellant.

PETTUS & PETTUS, and TOULMIN, TAYLOR & PRINCE, *contra.*

STONE, C. J.—There does not appear to be any controversy as to the facts of this case. The witnesses are substantially agreed as to every material question. J. Pollock & Co. were attaching creditors of McCaskey & Ratcliff, who had been partners in merchandise. The amount and *bona fides* of their claim are not disputed. It ante-dated the conveyance to Pritchett, after noticed. Pritchett interposed a claim to the property attached, and a trial at law ensued, called in our jurisprudence a "trial of the right of property." There were verdict and judgment for the plaintiffs in attachment, and Pritchett, the claimant, takes this appeal.

McCaskey & Ratcliff, on January 7, 1886, executed a conveyance, in form a bill of sale, by which they conveyed to Pritchett all their stock of goods, wares and merchandise, of every kind and description, in the stores occupied by them in the town of Camden, and also their iron safe, together with all the notes, accounts, mortgages, claims, and demands of every kind due the said firm of McCaskey & Ratcliff, except such as had theretofore been transferred to

the firm of Robins, Wilson & Co., of the city of Mobile. The recited consideration of this conveyance was the sum of ten thousand two hundred and twenty-five 56–100 dollars, in hand paid by Daniel S. Pritchett—six thousand six hundred and twenty-five 56–100 dollars, indebtedness of McCaskey & Ratcliff to said Pritchett, and three thousand six hundred dollars in cash paid by said Pritchett to McCaskey & Ratcliff. It is not disputed that this cash payment was made; and Prichett thereupon took possession of the property purchased.

The alleged indebtedness of six thousand six hundred and twenty-five 56–100 dollars to Pritchett consisted of the following loans of money, with interest computed, and for which notes had been given in the firm name :

Note, October 23, 1884..........................$  500.00
  "    March 18, 1885............  ............  2,000.00
  "    December 31, 1885.................  .......  1,000.00
(These payable to D. S. Pritchett.)

The following notes made by the firm, payable to J. C. Pritchett, but transferred to D. S. Pritchett :

Note, January 17, 1885.........................$  545.50
  "    December 31, 1885.......................    500.00

                                             $4,545.50
    Interest, about......  ......................    200.00

                                             $4,745.50

An individual note of Ratcliff to D. S. Pritchett, on which McCaskey was in no way liable, was put in as part consideration.........................  1,510.00
Interest on this about $235.

There was, also, a note given by McCaskey in his individual name, payable to D. S. Pritchett, dated December 3, 1885..  ..  .  .....  ................    400.00

                                             $6,655.50

It will be observed that, taking the items furnished in the testimony, and computing interest on them, the sum of them was then about two hundred and ninety dollars in excess of the six thousand six hundred and twenty-five dollars stated in the bill of sale. The result is, that the recited consideration of the bill of sale, as claimed in virtue of past indebtedness, is about eighteen hundred and eighty dollars in excess of the sum of the debts contracted in the firm name.

No testimony is offered tending to show that the firm was liable for, or in any way had the use of the fifteen hundred

and ten dollars, for which the Ratcliff note was given. The testimony disproves such use. As to the note given by McCaskey for four hundred dollars, Pritchett testifies as follows: "On the 3d of December, 1885, he loaned John W. McCaskey $400.00, and took his note therefor." McCaskey's testimony in regard to this transaction is as follows: "Witness borrowed $400.00 from said Pritchett on the 3d of December, 1885, and gave his individual note to said Pritchett therefor; and which sum witness put into the business of said firm of McCaskey & Ratcliff." This is all the testimony bearing on this item. It is insufficient to fasten it as a charge on the partnership, for the following reasons: *First*, the loan was made to McCaskey, and his individual note taken for it, while for the other loans made, both before and after that time, the notes of the firm were taken. *Second*, the individual debt of McCaskey to the firm of McCaskey & Ratcliff was greater by near two hundred and fifty dollars, than was the individual indebtedness of Ratcliff at the time the sale was made. This furnishes a reason why he should contribute to the funds of the then embarrassed firm, at least to the extent of his excess of indebtedness. *Third*, putting the money into the business does not necessarily imply that it was placed there as partnership effects, without any claim by McCaskey of an individual credit therefor. Had Pritchett sued the firm for this four hundred dollars, and offered in support of his claim only the testimony set forth in the transcript and copied above, it would have been insufficient to fasten a partnership liability on them. The legitimate consideration, then, which Pritchett paid in the purchase, was—

| | |
|---|---:|
| In past due indebtedness | $4,745.50 |
| Cash at time of purchase | 3,600.00 |
| Total | $8,345.50 |

The value of things purchased was—

| | |
|---|---:|
| Stock of merchandise | 6,000.00 |
| Solvent claims | 4,157.55 |
| Collectible | 432.98 |
| Ten per cent. of bad claims, yet collectible | 197.17 |
| Total | 10,787.70 |
| Difference | 2,442.20 |

We prefer, however, not to place our ruling on the insufficiency of the consideration.

Before, and at the time this sale was made, McCaskey & Ratcliff were insolvent, and Pritchett was informed of it. Each of them so testifies. The purchase by Pritchett was

proposed and made that he might become a preferred cred-
itor, and thus save his debt. This, under our rulings, he
had a clear right to do, provided he purchased at a reason-
ably fair price, and secured to the seller no pecuniary
benefit, which the law itself would not secure to him. If,
in securing his debt, he went beyond this boundary, and
secured to the seller a pecuniary benefit beyond what the
law itself would confer, this was a fraud. And the conse-
quence of such fraud is, not alone to avoid the conveyance
as to the benefit reserved: it vacates and annuls, for the
benefit of creditors, the entire conveyance.—*Lukins v. Aird*,
6 Wall. 78; *Crawford v. Kirksey*, 55 Ala. 282; *Sims v. Gaines*,
64 Ala. 392; *Lehman v. Kelly*, 68 Ala. 192; *Seaman v. Nolen*,
*Ib.* 463; *Com. Bank v. Brewer*, 71 Ala. 574; *Proskauer
v. People's Savings Bank*, 77 Ala. 257; *Shealy v. Edwards*,
78 Ala. 176; *Levy v. Williams*, 79 Ala. 171.

We have shown above that, by the sale made to Pritchett,
the two individual debts—one of Ratcliff for $1,510, and the
other of McCaskey for $400—were procured to be paid out
of the effects of the insolvent partnership of McCaskey &
Ratcliff. And this was done secretly, under a recital that
they were the debts of the partnership. This was a pecu-
niary benefit to Ratcliff, to the extent of one-half of the
debt, paid with the effects of another; and it was a fraud on
the creditors of the insolvent partnership, that by it a very
material part of its assets was misapplied to unauthorized
uses. The same is true of the misappropriation to McCas-
key's debt. And this was done knowingly and intentionally
by both seller and buyer. The law denounces such act as
a benefit reserved to the grantor, and the grantee can not
defend on the plea that he did not know it was against the
law. All men are presumed to intend the natural conse-
quences of their acts, and all men are presumed to know
the law. The following authorities declare such transaction
to be a fraud on creditors, and we consider them sound:
Bump on Fraud. Con., 399, 254; *Wilson v. Robertson*, 21 N.
Y. 587; *Burtus v. Tisdale*, 4 Barb. 571; *Geortner v. Trustees*,
2 Barb. 625; *Knauth v. Bassett*, 34 Barb. 31; *Keith v. Fink*,
47 Ill. 272. See, also, *Warren v. Taylor*, 60 Ala. 218;
2 Kent's Com. 65, and note; *U. S. v. Hack*, 8 Pet. 271; *An-
derson v. Martly*, 2 Ves. Jr., 244; *Moog v. Farley*, 79 Ala. 246.

All the testimony bearing on the question we have been
discussing comes from claimant, and it proves the facts re-
cited above without conflict. The deed of January 7, 1886,
from McCaskey & Ratcliff, is fraudulent and void as to
creditors not provided for. The Circuit Court would not
have erred, if the affirmative charge to find for plaintiffs
had been given without hypothesis. Such being the *status*

of the case, we need not inquire as to the correctness of the several rulings excepted to. They could not possibly do the claimant any injury.—1 Brick. Dig. 335, § 3; 3 *Ib.* 109–110, §§ 44–46; *Hall. v. Posey,* 79 Ala. 84; 1 Brick. Dig. 180, §§ 96, 99; 3 *Ib.* 405–406, §§ 20, 22, 24.

Lest this case might mislead, we will add that the first charge given at the instance of the plaintiffs does not state the principle correctly.—*Hodges v. Coleman,* 76 Ala. 103. Other rulings are subject to criticism, but we will not comment on them.

Affirmed.